Brett McCullough and the City of Allen, Texas and so on and so forth and Mr. Jeffrey we'll hear for you representing Mr. McCullough and others. Yes, your honor. I'm Jim Jeffrey. I represent Brett McCullough who is an appellant in the City of Allen who is a cross appellee in this matter. There's a lot of issues that have been briefed and because of limited time constraints I'm hoping to focus on the procedural due process claim against Mr. McCullough and his immunity to that claim and with time allowed I may try to address the takings claim and the rightness or lack of rightness as to the city. This case came to this court once before. It is a situation where Mr. McCullough who was the occupancy for Mr. Jabary's business, the certificate of occupancy allowed the business to be a restaurant. On the day of the revocation, Mr. Jabary was operating this business with an unclean kitchen, expired food, his sinks throughout the building were blocked, inoperable and there was tobacco and tobacco preparation devices scattered throughout the kitchen. The magistrate judge determined that these undisputed facts were sufficient to make a finding that Mr. McCullough reasonably determined there was a public health emergency at the time he revoked the certificate of occupancy. It's also undisputed that there were administrative procedures in place at the city by ordinance adopted pursuant to state statutes that the city ordinances closely followed that allowed for an immediate administrative appeal of the decision to revoke. But I mean, what the district court held, did it not, that there's a material issue of fact here as to whether an emergency or an exigency situation existed so as not to provide a due process at all? That's the question, isn't it? No, I don't think that's what the district court found. I think the district court specifically recognized that there was a public health exigency or emergency. What the court concluded is that under the circumstances which were undisputed, that a jury might find Mr. McCullough acted in an arbitrary way because some of the conditions had existed for a period of time. Well, that's what I mean. In other words, it was not an emergency situation that necessitated avoiding due process. In other words, it was not justified. The situation, I mean, it was a disputed issue of fact of whether the situation justified his taking action before he allowed a due process hearing. Well, in the context of this case . . . Am I right or wrong about that? I don't think there is a disputed fact . . . Beg your pardon? I don't believe there's a disputed fact . . . Well, I'm just saying what the district court said. I'm not saying that it's true or not. Well, the district court found that because a jury might find McCullough acted arbitrarily . . . Well, that's the standard. If a jury can reasonably find, then you're not entitled to summary judgment. Well, I don't think so, in the context of qualified immunity. And that's really where I should focus the argument, is you have a situation where the district court is applying the legal standards out of the Matthews Eldridge case, and there's three factors that are considered by the court, and applying the undisputed facts to those factors, was McCullough entitled to qualified immunity. And here's what I think is very significant . . . Okay. Go ahead. Go ahead. I don't mean to captivate your argument, but I'm just trying to get to the nutting of the thing, so you'll have plenty of time to address all of the issues. Yes, Your Honor. In the context of this case, where you have a permanent revocation under circumstances where the court found that there was a reasonable basis for determining an emergency or agency, the courts have a long history of dealing with public health exigencies and emergencies, even predating the Matthews and Eldridge case. And what is, I think, the court below incorrectly applied in the qualified immunity context, is the cases that allow an abatement of an emergent threat to health or safety, look at two factors. Was there a determination that an emergency situation existed requiring quick action, and was there an adequate post-deprivation remedy? And there's no case cited by the district court or by Mr. Jabari where if both of those factors existed, a court found that the government's interest in taking immediate action was outweighed by the other Eldridge factors. I thought one of the facts here was that although Jabari had a license or a permit to run a restaurant, that he wasn't serving any food. That's correct, except he had on the premises spoiled and expired food. Yeah, but if he's not running a restaurant, I mean, if he's really not operating as a necessitate shutting it down without going through the process. Yes, Your Honor. Mr. McCullough told Jabari at the time, you're not operating as a restaurant, your permit requires you to be a restaurant, you can't serve the food you have, you can't prepare the food. Mr. Jabari's reaction was, I can go to the grocery store and the strip shopping center that he's part of, buy some food, bring it back here. That's what he said when the guy asked about a sandwich. Okay, that's called a gotcha question. Okay, but the fact is that he was not operating a restaurant at the time. He had a permit, but he wasn't doing it. And aren't we really coming down to an argument about the facts? No, because if you have the facts that were determined to be a reasonable basis for finding a health emergency, and Mr. Jabari's willingness to continue trying to serve food under those conditions, that's the emergency. And the record is undisputed on those matters. Was it a manufactured emergency? I'm sorry? Was it a manufactured emergency? No, that's not being contended. Mr. Jabari was supposed to be operating a restaurant. He argued, I am a restaurant. Mr. McCullough said, you can't even serve me food. Mr. Jabari says, yes, I can. I'll go buy it and fix it for you. So if any other customer came in the door and wanted to buy food, the risk is Mr. Jabari will do exactly the same thing. Aren't there other . . . Well, I don't know that there really was a risk of that, and I thought that that's what the District Court . . . it says that it's a fact issue created by the testimony of McCullough himself to determine which version of the facts stated by McCullough are in fact true. He couldn't put his finger on an emergency issue, and so there's an issue . . . there's a fact issue about McCullough's testimony, whether it's really a true emergency issue. Your Honor, if you look at the context of that testimony, McCullough is trying to explain, number one, the issue about this business selling K2, which has now been determined to be a dangerous and prohibited substance, and number two, all of the . . . he kept referring to it as the bucket of circumstances, all of which added up to what he considered an emergency health problem. I mean, you have to say, reading between the lines here, is there some serious issue regarding McCullough's testimony that is the basis for the fact issue when it says here, which version of the facts as stated by McCullough are in fact true? That's a kind of . . . that's an extraordinary sort of statement by the Court. It is extraordinary, but . . . But not in any sort of illegal manner, but just as a factual matter. Well, but the Court didn't find any true conflict or material conflict in the facts. He says there's a material conflict with McCullough's own testimony. Which is the guts of it, or at least a very important piece of it. We need a jury trial to decide which one of McCullough's stories we're going to believe. That's what he said. Well, that . . . when the Court is evaluating qualified immunity, the Court has a right and should determine what is a material fact. Okay. Well, what was the . . . what is your argument on qualified immunity? That the law was not clearly established as to what he should have done under the situation? It sounds to me that you're arguing that the District Court was wrong to find that there was any violation of the law. Not . . . I mean, like in . . . When the error committed by the District Court is using the undisputed facts which the District Court recognized were sufficient to find an emergency, the District Court then broadly stating, without looking to cases with similar facts, broadly stated that there is a right, in a broad sense, to a pre-revocation hearing of some sort. The Court didn't look to, under the facts it found to be undisputed and found to be an adequate basis for determining there was an emergency. The Court didn't look to whether other cases had said acting in the way McCullough acted under those circumstances was a violation of the law. Well, to articulate it the way I would understand it is to say that there is a . . . clearly established right. That is, a man has a pre-deparation right to a hearing before he takes away his property. But under the circumstances here that McCullough recognized in that right, his conduct was reasonable because there were exigent circumstances. So the question of fact is whether there were exigent circumstances. Are there any material issues of dispute about the exigent circumstances? And that's the argument that the District Court said, yes, there is a dispute. And one of the factors, as I understand it, was . . . and how it fits in, I'm not quite sure, but is the motivation of McCullough. That all of a sudden this became important to him because it appeared in the newspaper, apparently, and also was motivated by the fact that the mayor had a property in that shop and center had a clean nose or something in that shop and center. Well, as to the mayor, the claims against the mayor were dismissed on summary judgment. Those haven't been appealed. What is, I think, important on the qualified immunity analysis is applying the facts that the court determined were undisputed, which were a reasonable basis for finding a public health emergency. Is there a case that would hold or put McCullough on notice that his conduct under those undisputed facts was constitutionally unreasonable? And I cited to the court the Vincent case that was released by the Fifth Circuit after I wrote my original brief and I didn't come across it at the time I wrote my final reply brief. The Vincent case applies the qualified immunity analysis in the context of a procedural due process case and does so exactly as McCullough has advocated from the beginning. The Vincent case in this court requires that the court look at the facts that have been determined and apply those facts in the context of cases that have to be due to the facts in the case at bar. Here, there has been no citation to authority by the district court or by Mr. Jabari that under the facts determined by the court to be sufficient basis for finding a public emergency that revoking the permit at that time was a violation of a constitutional right. And I think Vincent addresses that directly. You have to find specific facts in a case to put McCullough on notice that his conduct was a unconstitutional act. And that hasn't been done here. That wasn't done in the district court's analysis, although the district court agreed that the facts that I've pointed out were a sufficient basis for finding that McCullough was facing a public health emergency. He said, I couldn't put my finger on an emergency issue. And so he's not saying there is a public health emergency. So that's a problem. Well, in a qualified immunity analysis, you look at the facts objectively. The court is required to look at the facts objectively and not get into McCullough's subjective state of mind. And those facts, which were determined to be a reasonable basis for finding the emergency No, there was a reasonable basis. Clearly, there was a reasonable basis to find that there was a violation of the law. The question is whether the situation was so exigent that he had to take action without giving him due process. I mean, that's Well, and as I pointed out The district court didn't find that there was an emergency. He didn't even find there were facts that required an emergency without a due process of hearing. Well, and I mean, your premises of the wrong, it seems to me In the magistrate's original recommendation, he found that these facts were sufficient to support a finding that McCullough reasonably concluded there was an emergency. And the only reason that the magistrate recommended denying the motion for summary judgment was that a jury might find that McCullough acted arbitrarily. And the problem is this court has already affirmed the dismissal of the substantive due process claims based on the earlier determination by the district court that there was no arbitrary conduct sufficient to be, rise to the level of a constitutional violation. Okay, Mr. Jeffrey, you have a red light, but you've certainly saved some time for rebuttal and you can pick up those arguments on rebuttal. Thank you. Mr. Moser, we'll hear from you. Represent Mr. Jabari. May it please the court. My name is Nicholas Moser. I represent Mr. Jabari. As the court's already identified, this case is a question of pretext. The pretext that underpins the entirety of the actions of Mr. McCullough and the other high-ranking officials of the city of Allen show that the decision was made to revoke Mr. Jabari's permit before Mr. McCullough ever came to Jabari's doorstep on the day he left the hang tag. There is ample evidence inside the record that illustrates there was a plan of action. This was a coordinated plan of action. It permeated the entirety of the city of Allen. Every high-ranking official, every, the chief of police, police officers, it spread across the board. They had made their mind up prior to showing up at his door. That would be all right. There's nothing wrong with that in and of itself if there was, in fact, an undisputed emergency. But there was an emergency. Okay. Their basis for revoking— Well, okay. That's a point. I apologize for interrupting, Your Honor. Their basis for revoking was they recognized he had a right. They recognized he had a right to operate the way he was operating. They recognized that he had that right. And even if he was not making 51 percent food sales, which is the argument that they raise inside the record, inside those emails that form the basis of the revocation, even if he wasn't doing that, that did not apply to his use certificate. It only applied to alcohol sales and to special clubs or private clubs. The restaurant was sort of trashy, wasn't it? I mean, it was a lot— Oh, yeah. It was a wreck. But, I mean, the question is whether or not he had to have a hearing. Right. Well, and certainly—and there's adequate procedures if that was the basis for the revocation that's cited in the record at, I believe it's 2938 through 2944. That is a different city ordinance raised by the defendants that illustrates if it is the basis of an emergency on the food safety issues, then not only must you get notice, but you must get informed of that right to a hearing. The statute or the ordinance goes on to say that the people that are going to make up the panel are going to be Brett McCullough, they're going to be one of the code inspectors, and they're going to be a number of other people appointed by the people inside the city of Allen. That was raised by the city of Allen as the correct ordinance of what they should have done. They should have gone through that. But had they gone through that, then the revocation would have gone through an appropriate channel. It would have gone through an appropriate mechanism that Jabari would have had the knowledge of and the benefit of going through and at least trying to find a lawyer before he knew that his permit was going to be revoked. They didn't follow that. I mean, that's the essence of your case right there. Absolutely, Your Honor. They didn't follow that. They didn't follow the clearly established law. They knew that this was a clearly established right, and they recognized that this was a clearly established right. They didn't follow it. And as the magistrate points out, it might not necessarily be that we didn't dispute the facts, but McCullough's own testimony disputed the facts. When this is washed through a lawyer's office going through on preparing an affidavit or a declaration, it becomes much more refined. When you're looking at testimony of that individual during deposition, I couldn't put my finger on it. I couldn't put my finger on that issue. I don't know what that emergency issue was. Couldn't put my finger on it. I would like to turn to the takings issue because that is partially intertwined, and it was not addressed entirely by Mr. Jeffrey. Okay. On the first claim, you would like us to dismiss for lack of jurisdiction. Is that correct? On the first claim? The one that you were just arguing about, about the big fact issue because we can't, when there's a fact issue, we don't have the right to have that issue. I believe in reviewing the record, and we have made contradictory arguments, and I will admit to that, but there is a fact issue. That fact issue is sufficient enough that I believe that this court should allow that to stand and dismiss the qualified immunities element from this part of the appeal. Right. For lack of jurisdiction. We lack jurisdiction to resolve the fact issue. And now you're moving to your substantive takings point. Yes, Your Honor. And I believe the takings issue, it does underpin a bit of the due process claim because it forms the basis of why we're in the position we're in. We're in the position we're in on the takings claim because the city of Allen ignored the proper procedure. Had they followed the ordinance, had they followed that avenue, had they followed that where they gave him notice, Mr. Jabari would have been able to show up and present some kind of meritorious defense. And then once they decided that Mr. McCullough is not anymore capable of making that determination on whether or not he should have that certificate of occupancy at that hearing, then we would be in a different stance procedurally in this case. We're not because that underlying ordinance was inadequate to provide the remedy requested, which is also damages, but it's also inadequate to provide appropriate review of the takings claim. This court, I believe it was in the . . . So what should we do about it from your point of view? We've done what Your Honor Jolley indicated. We went back and attempted to ripen the claim, which is I believe what is required under Williamson County and this court's decision in Vulcan Materials. Both of those cases speak of ripening the claim. Williamson County talks about ripening the claim by proceeding to a state court remedy. Vulcan Materials talks about the inadequacies or the unavailability of the underlying state court remedy, which is what I believe we have in this circumstances. We have a state court that dismissed on ripeness. There are some arguments that it dismissed on sovereign immunity, but those can't possibly be the law in the state of Texas that the state retains immunity for a takings claim. That is something that is constitutionally waived by the Texas Constitution and the federal Constitution. The takings . . . But why isn't your case nevertheless blocked? If the state court lawsuit was dismissed for failure to comply with a reasonable state law exhaustion requirement, then your claim is not ripe under Liberty Mutual. It's not ripe under Texas law. I believe it has ripened for the purposes of federal law. We don't quite raise to the level of being blocked by a San Remo type instance because in the San Remo litigant's position, they had the opportunity to have their day in court and to determine whether or not that remedy was available. They ultimately lost after trial and several appeals. We never got to the point of making any determination besides that trial court making the decision that it lacked subject matter jurisdiction over the claims. Now, it may have done that because of ripeness and definitely not because of sovereign immunity because that has been waived by the Constitution. Right. Well, hasn't the Supreme Court held that a takings claim is unripe under federal law if a state court has dismissed the claim due to noncompliance with reasonable state law exhaustion or pre-permanent processes? Permanent processes, that's a different case. But under state law exhaustion. It's a state law exhaustion problem you have. And doesn't the Supreme Court held that a federal claim is unripe if you didn't comply with the reasonable state law exhaustion in the Palazzo versus Rhode Island case? I apologize. I'm not immediately familiar with that. I would like the opportunity to address it after that. Okay. I'm sorry. I do recognize that issue.  As far as the state court process, it's a question of futility, whether or not that futility avenue is available and whether or not that futility issue comes up and is sufficient enough to prevent the claim from going through the proper ripeness channels, which we argue would be the case because the correct ordinance, once it's looked at, indicates that the people that are going to perform the decision overlooking the takings claim is going to be the very people that performed the revocation themselves, Mr. McCullough. But in addition, the underlying ordinance, either one of them, does not provide for money damages, which this court in Bowlby indicated that money damages are a necessary component of providing appropriate complete relief in a takings claim. If you're not going to be able to get money damages, then that relief is inadequate. And if that relief is inadequate, then we've come up back to Williamson County where it's inadequate or unavailable. All right. And the takings claim was a completely separate claim from the other aspects of your case. It went up. Did it go up? Did you file a separate cause of action for your takings claim apart from the 1983 due process claim? Yes, Your Honor. After the previous decision in this court, we returned to the federal district court. Once we returned to the federal district court, the judge stayed all of the proceedings so that we may go and exhaust those state remedies. All right. And in doing that, did you file a separate cause of action from the one that disappeared? Yes, Your Honor. We filed in Collin County's district courts. And you asked for compensation for the deprivation of the property. Yes, Your Honor. And the remedy that the state law said you had—that the state court of appeals said you had not exhausted did not provide for any compensation. It only provided for the restoration of its license. It provided for a stay, I believe, is the ordinance that was cited as the method of why they were revoked. It provided for a stay of that individual's decision, and it provided for reinstatement but provided for no money damages. And so— So it's inadequate. You have pursued all adequate—I mean, you've pursued all of the remedies that are available to you, and the state court denied it. Yes, Your Honor. And whether they denied it on a correct basis or incorrect basis, you have satisfied Williams. I mean, that's your position. You've satisfied the federal requirements. I haven't proceeded first and given the state an opportunity to compensate you for the alleged takings. Precisely. Okay. On your takings claim, did you brief the challenge to the district court's ruling as to issue preclusion? Those were muddled within the same, and I imagine they were not as clear as I had hoped initially, but they were addressed within the same type of components as far as the claim preclusion side. However, the district court, the federal district court, when it was making its decision, it was looking at the issues of whether ripeness for state court purposes or whether immunity for state court purposes provided a bar to reentry to the federal court. The immunity issues don't apply because Texas is clear that it requires no additional waivers beyond that that are contained in the Constitution. As far as the ripeness requirements, the ripeness requirements in the state court are one vein of this process. And the other vein of that process is if those are inadequate or unavailable, then we should be able to return to federal court. There is, I've waxed philosophically about it. I've tried from a jurisprudential analysis of it. I have been dealing with this case since I graduated law school. So I have been looking at this case for a long time from my freshest memories. It was what, in 1940? No, Your Honor, about six years ago. Okay. I have been dealing with this case from my freshest memories of constitutional law and looking at those processes as much as I can and recognizing I'm not as well educated and as knowledgeable about the law as the panel sitting before me. Looking at those issues, looking at those, separating out and having a right to your certificate of occupancy, having that right being taken, and then having no avenue to seek redress because of the failures of the statute to provide that redress or because of the decision of the court that it was not right for state court purposes should not preclude you from coming back to the federal court and litigating that issue of either a futility or of exhaustion. We have exhausted. The court might have established that it may or may not have been futile, but the exhaustion requirement at the federal court level is something that was not squarely addressed by the underlying court of appeals. So I believe that issue is separate enough from the futility argument, which may have been decided, but it's something that should be exhausted at the federal trial court level because it's now clear that state court remedies inadequate or unavailable. It's really interesting. Can you explain the contours of the takings claim that you would actually try to make out? Is it a regulatory taking, a physical taking, or something else? The exact nature of what's happened is Mr. Javari lost his certificate of occupancy. He was barred from his lease, so he couldn't return there. The landlord ended up throwing him out once he lost that certificate of occupancy. The shopping center, and through the city's mechanism, reassigned some additional certificate of occupancy to a new tenant. So he couldn't do a hookah lounge or whatever? There is evidence in the record which says that, and this is less false to Mr. McCullough, which is at 733 of the record, and I believe since there are two records, it is the 99.733 part of the record. But false to Mr. McCullough said, let's agree that there's not 51 percent food sales, then pull the CEO. Once we pull the CEO, he then says, then Lee has suggested not to reissue the CEO on a main use as a smoke shop, which is not permitted. So they've already made up their mind. They've come down on him with the force of the city of Allen. They have made up their mind before he showed up. What does that mean, main use as a smoke shop, which is not permitted? What is the which is not permitted? Main use can't be under the code or something? There is some contours of the land development code, which was cited as the basis of the revocation, which is also cited in the discussions between Mr. McCullough and the various city officials. Because Mr. Jabari was a full smoking facility, that smoking is allowed in any part of the facility without restrictions or air ventilations or any additional pieces of equipment necessary. The question was whether or not a smoke shop in the specific designation of the city would be permitted. The full smoking restaurant seemed to best fit his hookah lounge, which also serve food or serve other accoutrements, drinks or whatever the case may be. It provided that operating basis. The smoke shop concept is allowed in other places in the city of Allen, but not in that specific zoned special use district or that specific district that is zoned for whatever the basis they use. So is it a regulatory taking then? I believe it's partially both because from what we've been able to establish on the regulatory side, there's no regulation that actually says any of this. So we're struggling with if it's a pure regulatory taking because there's no regulation that specifically says 51% food sales is required in order not to be a smoke shop or 51% food sales is required in order to be a restaurant. So where it would traditionally be a regulatory taking based on the use of a regulation, we now have something that's more or less a hybrid type regulatory taking where it's a regulation that they think exists, but they've already said we don't think this exists as a requirement. Interesting. And that's the best explanation I believe I can provide based on what we have so far. I believe I've walked through most of what I wanted to address. There were some questions before I return my time. There were some questions that were raised related to the sufficiency of the clearly established right. I believe Judge Jolly in his prior opinion in this case citing to Bowlby identified that as a clearly established right, that that certificate of use and the due process was a clearly established right. So to the extent that a case doesn't exist, I believe that either Bowlby or the previous decision in Jabari operates as law of the case or a clearly established precedent that indicates that this was a clearly established right to his certificate of occupancy which required due process prior to the revocation. With that, if there's any other questions, I'll be happy to answer them. Other than that, I'll be happy to give my time back. Thank you, Mr. Mosen. Thank you, Judge Jolly. Yes, sir. Mr. Jeffrey. Thank you, Your Honor. Starting with the reference to Bowlby, Bowlby never involved any accusation or claim there was an emergency. It was a simple change of mind as to whether that business, a snowball stand, fit in that zoning district. This issue about the underlying ordinances being inadequate, that was first raised in the appeal briefing filed in this court. It was never raised in the district court. It was never raised in the state court proceedings. It's too late to raise that now. And it's unfair for the city to try to address that for the first time in an appellate proceeding. The issue that I think is very important on this rightness, the reply brief— The fact that he couldn't have obtained compensation for the time he was out without his operating license is not properly before us? Yes. In fact, to the extent it is, this court of appeals has already addressed a claim like that in its Severance v. Patterson case decided a few years ago. That case involved a dispute over the Texas high tideline, and that case also had an administrative appeal process that did not allow for compensation. And this court said that the court has never required that sidestepping such a procedure that doesn't allow compensation is sufficient to ripen a claim. In other words, in the Severance case, this court said that under the takings and due process argument, that a claim still has to ripen using the available procedures, administrative procedures, even if those procedures themselves don't allow for compensation because the next step is to go to the Texas court, in this case the Collin County District Court, and then it went to the Dallas Court of Appeals. I was asking in this case whether there was a separate lawsuit apart from the one that is before us today that was filed in state court. There was. For takings. Yes. They were not dependent. I mean, I guess they were not dependent on the city administrative procedures for their claim. That's correct. So they were asking the city to compensate them notwithstanding the fact that there may be administrative procedures to address other issues.  I don't know that. Yes. By the way, we kind of both glanced upon the Reese Judicata issues. The argument that is being made here today that there was some sort of futility, that was addressed by the state courts and resolved against Mr. Tabari. The second aspect of the right in this claim that was raised in argument is that the procedures don't allow for the resort to state court prevents ever really getting to litigate your federal claims in federal court. And again, that was addressed in the severance case. In fact, both discussions at that aspect of the right in this argument here were addressed in severance at 566 F. 3rd at 497 and 498. Was that cited by you? We cited the severance case in our briefing. For this point in this specificity? Likely not because this point was not raised by Mr. Tabari until his final reply brief. Can you help me basically on this? How is the state court's judgment based on sovereign immunity if Texas is waived sovereign immunity for the properly pleaded takings claim? I'm sorry. There's just a basic. Can we start at the first principles? Yes. In Texas, if you don't have a waiver of sovereign immunity, the court doesn't have jurisdiction. And in this case, we asserted the court didn't have jurisdiction. I'm sorry. A waiver of sovereign immunity as to the takings claim because it wasn't right. And the trial court and the court of appeals agreed. The Fifth Circuit in its Flores case has already held 22 years ago that a determination on a plea to the jurisdiction, a sovereign immunity plea to the jurisdiction, is in fact a final binding judgment for res judicata purposes. The Fifth Circuit cites the Heron case where they didn't reach that exact result except they commented that that would be an unfair result in that case because the plaintiff in that case hadn't had an opportunity to amend the pleadings. I see I'm out of time. I can reference one more case on that point. You can certainly do that in a letter to the court if you wish. Thank you. Thank you, Mr. Jeffrey. That completes the cases that we have on the oral argument calendar today, and that completes the cases that we have on this particular oral argument calendar.